## Elisha F. Fales & *al.* vs. Charles Reynolds.

Where the defendant was indebted to the plaintiffs, and on being called on by them to secure the debt, made an arrangement whereby he paid them a sum of money, indorsed to them several notes said by him to be good, and gave them an absolute deed of certain real estate, not of sufficient value to pay the debt, but with the amount of the cash and notes more than sufficient, and took back their agent's own bond, that the real estate should be reconveyed if the whole debt was paid in eight months, the plaintiffs declining to take a mortgage thereof, and no receipt or discharge of any part of the debt being given; and where it afterwards proved, that most of the notes were not good, and an action was brought on the original demand within the eight months, without returning any of the property received; and where at the trial, parol proof was offered, that both the real estate and notes were taken as collateral security only; *it was held*, that the real estate should not be considered a mortgage, but as a payment at its true value for so much; and that, if the value of the land with the cash received and the amount collected on the notes equalled the original debt with interest, the action could not be maintained; but if they did not, that the action was maintained, and that judgment should be rendered for the balance.

This was an action of *assumpsit*, brought *February* 8, 1834, upon a note of hand, dated *Nov.* 25, 1832, wherein the defendant promised to pay the plaintiffs $992,56, on demand with interest; also upon an account annexed for merchandize for $183,77. The note declared on was adduced in evidence, upon which there were certain indorsements. It was admitted, that the plaintiffs had furnished the defendant the merchandize stated in the account annexed. For the defendant, *Samuel Garnsey, Esq.*, testified, that he was attorney for the plaintiffs, to whom their demands were forwarded for collection, that having previously made a private attachment of the defendant's real estate, he, by direction of the plaintiffs, by their letter of *November* 1, 1833, on the 26th of that month, went to *Garland,* where the defendant lived, with an officer, for the purpose of securing the demands, by an attachment of the defendant's goods; that he saw the defendant, and proposed to him to secure the plaintiffs by indorsed notes, which he declined to do, saying he had never asked any one to sign with him; that he was then about to attach the defendant's goods, who thereupon offered to pay him on behalf of the plaintiffs $100 in cash, to turn him out good demands which might be collected in 3 or 4 months, to

the amount of four or five hundred dollars, and to secure the balance due by a mortgage of his real estate; that he, the witness, declined taking a mortgage, stating as a reason, that he wished to avoid the long time required to foreclose a mortgage, and proposed in order to attain the object, to take an absolute deed, and to give him a contract or bond to reconvey on payment, to which the defendant consented; that confiding in the assurance, that the demands were good, and influenced by that consideration alone, he received the $100, for which he gave a receipt, that sum not being indorsed on the note, received the notes and demands amounting, exclusive of interest, to $461,07. At the same time, he took an absolute deed of the defendant's real estate, and gave his own bond, conditioned, that the plaintiffs should give their bond to the defendant to reconvey the same, on payment of the amount due, within eight months. He also testified, that the land was conveyed, as collateral security; that he used all proper diligence to collect the demands assigned; that he had collected on them at the commencement of the suit only $36,91, whereupon being dissatisfied with the demands, not proving to be such as he expected them to be, and in pursuance of letters of instruction from the plaintiffs, he commenced the present action, and *Feb.* 18, 1834, went again to *Garland* to see the defendant; that he told him the plaintiffs were dissatisfied with the security he had taken, and wished him to get security by indorsed notes, payable at certain periods; that the defendant offered to give them security by indorsed notes, if they would restore him the security they already had, but he would not agree to give it payable in so short a time as the witness proposed, which not being acceptable, the witness caused all the defendant's attachable property to be attached in this suit: He further testified, that he never supposed the defendant intended to deceive him in relation to the character of the demands, and that since the commencement of this suit, he had informed the defendant that if the suit were not settled, he should sell the real estate; that he had at his office the bond stipulated for in his bond to the defendant within the time stated in his bond; that he notified him of it, and in *June,* 1834, offered it to him, if he would give up his, the witness', bond; that before he commenced this suit, he had ascertained that the demands assigned were a poor lot; that the defendant had, before and since the suit,

Fales *v.* Reynolds.

advised with him as to the best mode of managing them, and read the defendant's letters to himself respecting them; and that now he had collected on all of them, $159,64, and he thought he should be able to collect little or nothing more.   The consideration expressed in the deed was $850, and four witnesses testified, that it was worth that money.

The defendant's counsel contended:

1. That the absolute deed, taken by the plaintiffs, paid their debt.

2. If it did not, that by that and the bond given by the plaintiffs, the defendant's term of credit was extended eight months, and that the action was prematurely brought.

3. That the witness should not be permitted to testify what the meaning and intention of the parties to the papers aforesaid were; but that the intention should be gathered from the papers alone.

4. That the plaintiffs could not lawfully commence the suit, without first restoring the demands assigned.

A default was entered by consent, it being agreed that if in the opinion of the Court, either ground is maintained by the defendant, the default was to be taken off, and a nonsuit entered, otherwise the default was to stand, and such judgment entered as the plaintiffs are entitled to by law upon the facts.

*J. Appleton,* for the defendant, enforced the position taken at the trial, and cited *Erskine* v. *Townsend,* 2 *Mass. R.* 493; *Kelleran* v. *Brown,* 4 *Mass. R.* 443; *Lund* v. *Lund,* 1 *N. H. Rep.* 39; *Runlett* v. *Otis,* 2 *N. H. Rep.* 167; *Bickford* v. *Bickford, ib.* 71; *Bodwell* v. *Webster,* 13 *Pick.* 413; *Hale* v. *Jewell,* 7 *Greenl.* 435; *Grafton Bank* v. *Woodward,* 5 *N. H. Rep.* 99; 1 *Wend.* 318; 3 *Camp.* 57; and *Cleverly* v. *Brackett,* 8 *Mass. R.* 150.

*Kent,* for the plaintiffs, remarked, that this was not a question about title, but simply on this point, whether there was any payment; and if any, for how much.   In equity, the transaction would be considered a mortgage, and in this action of *assumpsit,* it should be so treated.   4 *Kent's Com.* 142; *Hughes* v. *Edwards,* 9 *Wheat.* 489.   But even by the strict rules of the common law, this would be considered a mortgage.   *Blaney* v. *Bearce,* 2 *Greenl.* 132. Both the parties considered it a mortgage at the time.   But if not a mortgage, it could not be considered a payment for more than the

plaintiffs could realize from it. There was no indorsement on the notes, and they could not have supposed it a payment. The defendant, by paying the amount due, may still have his land back. The intention of the parties was properly given in evidence. An absolute bill of sale has been permitted to be proved conditional by parol. But here the witness was called by the defendant, and it is his own evidence, to which he cannot object. *Read* v. *Jewett*, 5 *Greenl.* 96 ; *Smith* v. *Tilton*, 1 *Fairf.* 350.

The taking of collateral security, or accepting a partial payment, cannot amount to an extension of the time of payment. Giving a time for the redemption of the property mortgaged, cannot take away the right to enforce the original demand by action.

The demands indorsed, or assigned, were not to be a payment further than collected. Deducting the sum received on them, and even allowing the land at the valuation in the deed, and there is still a balance due. But we are entitled to recover at least the amount of the demands assigned as good, and which proved of no value.

The action was continued, *nisi*, and the opinion of the Court afterwards drawn up by

WESTON C. J. — The agent and attorney of the plaintiffs, on his first visit to the residence of the defendant, made an arrangement about this debt, satisfactory to himself at the time, and finally approved by them. He received one hundred dollars in cash, demands supposed to be good to the amount of four hundred and sixty-one dollars, and for the balance, an absolute deed of the defendant's land. A time was allowed to him, within which to redeem it ; but he entered into no engagement to do so. It was a privilege conceded to him, of which he might or might not avail himself, according to circumstances. It is true the attorney testifies, that the whole was received as collateral security ; but he further testifies, that he refused to take the land by way of mortgage, but insisted upon an absolute deed. The right to redeem within a stipulated period, secured to the defendant in a subsequent instrument, was introduced for his benefit, not theirs. If we had no statute, defining and regulating mortgages, according to the principles which have prevailed in Courts of chancery, the transaction

between these parties might be regarded as a mortgage ; but not under our law, as appears by the cases cited for the defendant. There is no controversy as to the purpose for which the land was conveyed. It sufficiently appears, under the hands of the plaintiffs. The land is absolutely theirs, and the effect of it is, that it has extinguished the balance for which it was received. They would not take a mortgage, and wait until there could be a foreclosure of the equity. They insisted upon having the command of the property at once. It paid their debt then, at least to the amount for which it was received ; as land mortgaged after foreclosure, if of sufficient value, extinguishes the debt of the mortgagee.

But it is insisted, that although the land may pay the amount due to the plaintiffs, after deducting the payment in money and the amount of the personal securities, yet that the part of the debt, to which the personal securities were to be applied is not paid, because the greater part of them proved bad. The plaintiffs' agent, however, *Mr. Garnsey*, acquits the defendant in his testimony, of any fraud or intentional deception, in relation to the available value of these demands. If the fair expectations of the plaintiffs, arising from the assurance of the defendant, that they were all good, have been disappointed, as the case finds, and they would for that reason have repudiated the arrangement, and sought other security, they should have returned to the defendant what they had received of him, with which they had become dissatisfied. But they retained all, and claim to hold the defendant indebted to them, on their original demand, for the deficiency in the value of the securities. They cannot now place the defendant in *statu quo.* If they would go behind the former arrangement, we are of opinion, that the whole transaction must be considered open to be adjusted upon equitable principles. The plaintiffs should not be held to account for the property, beyond what it may be made available to them. Let it be ascertained what the land would sell for to a fair purchaser. If this sum, together with the money received, and the amount collected on the demands, equals or exceeds the plaintiffs' original debt with interest, the default is to be set aside, and the plaintiffs are to become nonsuit. If there proves to be a balance still due to the plaintiffs, upon such an adjustment, the default is to stand, and the plaintiffs to have judgment for that balance.